CHARLES A. ROBINSON et uxor

*vs.*

FRED B. HIGGINS COMPANY.

Lincoln.    Opinion February 4, 1927.

*If the construction or extension and maintenance of a wharf in tide water below low water mark in front of the shore or flats of another would result in injury to, or injuriously effect, the enjoyment by such owner of his rights incident to such ownership, his consent must be obtained.    No consent required if the rights of such owner are not infringed upon.*

In the instant case the contention by the plaintiffs, that the proposed extension of the wharf would impede unreasonably and unlawfully, the right of egress and ingress from and to their land over the deep waters is sustained.

On appeal from a decree of sitting justice in equity.    A bill in equity seeking to enjoin the defendant corporation from extending its tide-water wharf in front of the shore of land owned by plaintiffs on Spruce Point in Boothbay Harbor.    A hearing was had upon bill, answer, replication and proof and the sitting Justice found that the proposed extension of the wharf would injuriously effect the rights of ingress and agress of the plaintiffs in their property by way of the sea, and from a decree for permanent injunction defendant appealed. Appeal dismissed.    Decree below affirmed.

The case sufficiently appears in the opinion.

*Verrill, Hale, Booth & Ives* for plaintiff.

*Cyrus R. Tupper,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, BARNES, PATTAN-GALL, JJ.

DUNN, J.    From the decree which enjoined the defendant corporation from extending its tidewater wharf in front of the shore of the plaintiffs without their consent, this appeal was made.

Plaintiffs own littoral land in Boothbay Harbor. They occupy it in the summer months as cottagers. Of the upland and shore property adjoining on the southwest, defendant is proprietor. The business of the defendant is that of dealing in lobsters.

Two different grantors, of whom the defendant company was one, and he whose name the defendant corporation bears the other, on the same day in 1910, conveyed to the immediate predecessors in title of these plaintiffs two contiguous parcels of real estate.

That which the defendant conveyed was the smaller in area. Its base line runs along a sea wall for thirty eight feet, from whence the calls and courses are to low-water mark and by low-water mark and back to where the base line begins.

In front of this lot, when it was conveyed, and between it and the open sea, in the deep waters about sixty feet beyond low-water mark, was the northeasterly part of the wharf of the defendant.

That wharf, thus to speak in convenience of the aforesaid portion of the whole, is still there. Behind it the defendant moors lobster cars. The cars are long, though not as long as the wharf, and, when moored successively, the last lies well in toward low-water line.

The other lot begins on the highway. A boundary which extends to low water describes it. Of the sea wall, thirty linear feet are embraced, or less by eight feet than the first lot has; the distance figures being approximate.

Speaking relatively, the lots together form a quadrangle, having sea frontage of sixty eight feet.

The second lot, where the cottage is, was conveyed subject to the restriction, for the benefit of other land of the grantor, and to run therewith, that on the shore of the conveyed lot there must be no wharf.

In conveying, by consolidated description, the two lots as one, plaintiffs' grantors incorporated in the deed, the same restrictive phraseology which one, and but one, of their own title deeds, contains. Later they essayed to annul the restriction. But the title to that estate, as pertaining to which the limitation was imposed originally, had not come to the grantors, and hence it was not for them to abrogate the primal restriction. So far as that restriction is concerned, it remains. But this defendant, not being owner of the estate or tenement in favor of which the limitation is and to which it is attached, may not insist that the limitation be observed.

However, in portraying the situation in this cause, it is consistent to remark that, since the restriction, there has been placed below low-water mark on the shore or flats a removable wooden structure indifferently called a float or wharf.

To that structure, boats have been made fast, and to it persons have come from the higher ground and thence returned, by means of the pier and the slip built and maintained on the shore for the purpose, under circumstances which it has been adjudicated are equivalent to waiver to such extent by the owner of the controlling estate, of the restriction.

The float when in station marks the ocean avenue of the plaintiffs.

In this stage of matters, the defendant concern became desirous of extending the end of its wharf, at the same width, for thirty feet farther below low-water mark in front of the shore of the plaintiffs.

License for the proposed extension has been had from the municipal officers. R. S., chap. 4, sec. 121, as amended by 1925 Laws, chap. 180.

Besides the license, the consent of the owner of the land in front whereof the extension would be is prerequisite. R. S. same chapter, sec. 125.

Not every owner of upland and shore, or shore, where the owner has divided upland and flats, need be consulted. *Sawyer* v. *Beal,* 97 Maine, 356.

The consent of legislative contemplation is to be given by a shore owner whom the wharf extension, in consequence of its nearness or position, would injure, or injuriously affect, in the enjoyment of his rights, as such owner. *Sawyer* v. *Beal,* supra. Injury, real or menacing, to rights incident to the ownership of property bordering on tide waters, is the criterion in determining whether assent is essential.

Not only did the plaintiffs deny consent, but they brought these enjoining proceedings.

The cause was heard below on bill, answer, replication, and proof. Contention by the plaintiffs, that the extension would impede unreasonably and unlawfully the right of egress and ingress from and to their land over the deep waters was sustained. Absolute injunction was decreed.

Defendant brought the record here.

First, is the urge that the plaintiffs, instead of filing the bill, should have exhausted remedy by appealing from the municipal officers to the commission of sea and shore fisheries. 1925 Laws, chap. 180.

At common law it is the presumption that the owner of sea frontage has, in virtue of his ownership, the right of ocean access for the whole width of the frontage.

Without here going into distinctions, nor attempting to demark boundaries, it is sufficient to note that the invoked statute deals with rights of the public, and not with the private right of the adjacent owner to grant that consent made essential in certain instances legislatively.

The bank of the shore of the plaintiffs is rockbound and rough. Way of approach from the sea may be had, in reasonable safety and comfort, only by wharfing out, an end the aforementioned float subserves.

Against sailing southwesterly from the shore, the pier of the wharf of the defendant is barrier..

The conformation of the opposite shore is precluding in that direction.

Ahead, the existing wharf partially bars passage.

If the wharf were extended as proposed, in front of the shore, there would be but little clear space.

Boats fastened by painters to the shore side of the extension, or to the floating cars astern, might collide with the not far away float.

In the plaintiffs' harbor, as it would be if the extension were built, a craft of ordinary length would lack for a place to turn, and want for anchorage berth.

A boat, there is testimony, that came in directly, might have to go out backward.

On the other hand, nothing would hinder extending the wharf from the other end, with equally good protection from winds, equally good lee, and equally good storage for cars. Or, in the stead of extending an end, it would be feasible to project the whole wharf farther into the sea.

The record is not an uncontroverted one.

The prevailing winds, the advantage in unlading smacks to leeward, that the piling beneath the extension would be breakwater of no mean moment, the unsuitableness of the shore, and the bottom, all these and other things are stressed and countered.

Amid the contradictions, the equity judge, whose advantage it was to guage the testimony after seeing as well as hearing the witnesses, determined for the plaintiffs. And so does this court from the printed pages that perpetuate the evidence.

There is no issue touching relative property rights, the right to maintain the so-called float has been decided finally, that the defendant proposes to make the extension is conceded, and that the extension would unduly trench upon the right which is that of these plaintiffs, to come to and go from their land by water, is shown clearly.

The plaintiffs have made their case for equitable relief from threatened injury. *Props. Maine Wharf* v. *Props. Custom House Wharf,* 85 Maine, 175.

> *Appeal dismissed.*
> *Decree below affirmed.*